UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NEAL JAMES,

    Plaintiff,

v.

WARDS COVE PACKING COMPANY, a foreign corporation, F/V OCEAN MAID, her tackle, gear, furniture, apparel, and equipment,

    Defendants.

No. C04-1409Z

ORDER

## BACKGROUND

Plaintiff Neal James was employed by Defendant Wards Cove Packing ("Wards Cove") during the winter of 2002/2003. Ex. A to Madden Decl., docket no. 19, at 6-7 (James Dep.). On January 7, 2003, Plaintiff fell and was injured while disembarking from the F/V Ocean Maid. First Am. Compl., docket no. 27, at ¶ 16. At the time of the incident, Plaintiff was working at the Wards Cove facility on Lake Union in Seattle, Washington (the "Seattle Yard"). James Decl., docket no. 25, at ¶ 5. From November 2002 through January 2003, Plaintiff worked for Wards Cove as a welder. Steele Decl., docket no. 20, at ¶ 2. Plaintiff's duties included working on shore in the welding shop and performing repairs on Wards Cove vessels moored at the Seattle Yard. Id.

From November 2002 through January 2003, Plaintiff resided on the Wards Cove vessel F/V Ocean Maid, which was laid up for the winter and moored at the Seattle Yard.

ORDER  -1-

Id. at ¶ 5. The F/V Ocean Maid did not sail during the winter of 2002/2003, and was used solely as a dormitory for skilled, out-of-state workers such as the Plaintiff. Id. Wards Cove offered its employees the opportunity to reside on the F/V Ocean Maid in order to make winter jobs in Seattle more attractive to skilled workers coming from outside the Seattle area. Id. at ¶ 6-7.

During the winter of 2002/2003 Plaintiff James performed maintenance and repair work aboard Wards Cove's fleet of vessels.[1] See James Decl., docket no. 25, at ¶ 5. Plaintiff's tasks included welding leaky fish tanks, handrails, and other vessel instrumentalities. Id. In addition, although the Wards Cove vessels on which Plaintiff worked were laid up for the winter, Plaintiff occasionally assisted in repositioning Wards Cove vessels in the Seattle Yard. Id. This included taking vessels out into Lake Union in order to turn them around, as well as handling lines. Id. Plaintiff acknowledges his shore-based employment, but claims that approximately 50% of his work was performed aboard various Wards Cove vessels. Id. Plaintiff also alleges that while working onboard Wards Cove vessels in the Seattle Yard he was "regularly exposed to the perils generated by pitching, rolling, and moving vessels." Id. at ¶ 6.

On January 7, 2003, at approximately 9:30 p.m., Plaintiff slipped and fell backwards while walking on the gangway from the F/V Ocean Maid to the dock. Id. at ¶ 8. At the time of his injury, Plaintiff was living aboard the F/V Ocean Maid and spent most nights aboard the vessel. Id. However, Plaintiff had not performed any tasks while working aboard the

---

[1] Plaintiff includes a substantial discussion and factual background of his prior work for Wards Cove, which involved maintenance and repair work aboard Wards Cove vessels in the Ekuk and Red Salmon facilities in Alaska. See James Declaration, docket no. 25, at ¶¶3-4. However, the Court can look only to Plaintiff's employment status and assignment at the time of the injury in determining Plaintiff's "seaman" status. Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 556 (1997) ("[T]he employee's prior work history with a particular employer may not affect the seaman inquiry if the employee was injured on a new assignment with the same employer, an assignment with different 'essential duties' than his previous ones").

ORDER  -2-

F/V Ocean Maid for nearly two months; Plaintiff's last work assignment aboard the F/V Ocean Maid was from November 12, 2002 through November 15, 2002. Id.

## DISCUSSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

For purposes of this motion, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the opposing party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). However, while "[t]he inquiry into seaman status is of necessity fact specific," "summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." Heise v. Fishing Company of Alaska, Inc., 79 F.3d 903, 905 (9th Cir. 1996).

## I. Jones Act Seaman Status

Defendant urges the Court to dismiss Plaintiff's Jones Act claims because Plaintiff is not a "seaman" under the Jones Act.[2] "[A] seaman must have a connection to a vessel in navigation that is substantial in terms of both its duration and its nature." Heise, 79 F.3d at 906 (quoting Chandris, Inc. v. Latsis, 515 U.S. 347, 368-69 (1996)). Under the appropriate

---

[2] Plaintiff again urges that "it is usually inappropriate to take the question of seaman status from the jury," citing Wilander, 498 U.S. at 356. However, Wilander holds that "[n]onetheless, summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." 498 U.S. at 356. Thus, the question of seaman status is properly before the Court on summary judgment.

ORDER   -3-

inquiry

> the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon . . . The ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

Id. The requirement that a seaman be aboard the vessel "primarily to aid in navigation" was "jettison[ed]" by the Supreme Court in 1991. McDermott International, Inc. v. Wilander, 498 U.S. 337, 353 (1991). Jones Act remedies are available to traditional seamen who owe allegiance to a vessel at sea, but who do not aid in navigation. Id. at 354.

The Supreme Court has articulated the test for "seaman" status in two parts. First, "an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission.'" Chandris, 515 U.S. at 368 (citing Wilander, 498 U.S. at 355). Jones Act protections extend only to maritime employees who do the ship's work. Id. The Supreme Court clarified that this threshold requirement was broad: "[a]ll who work *at sea* in the service of a ship" are eligible for seaman status. Id. (citing Wilander, 498 U.S. at 354) (emphasis added). Second, the employee must have a connection to a vessel in navigation, or to an identifiable group of such vessels, that is substantial in terms of both its duration and its nature. Chandris, 515 U.S. at 368 ("If it can be shown that the employee performed a significant part of his work on board the vessel on which he was injured, with at least some degree of regularity and continuity, the test for seaman status will be satisfied") (quoting 1B A. JENNER, BENEDICT ON ADMIRALTY § 11a, pp. 2-10.1 to 2-11 (7th ed. 1994)).

However, although the Court set forth the test in general terms, it "eschew[ed] the temptation to create detailed tests . . . that tend to become ends in and of themselves." Id. at 369. Instead, the Court stressed:

> "the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon." . . . [T]he ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

ORDER   -4-

1  Id. at 370.  Plaintiff urges the Court to consider his eleven years with Wards Cove in
2  evaluating his employment status, and argues that this Court should reject a "snapshot" test
3  for seaman status.  However, the Court can only look at the Plaintiff's present work
4  assignment.  Papai, 520 U.S. at 556.  "[T]he employee's prior work history with a particular
5  employer may not affect the seaman inquiry if the employee was injured on a *new*
6  *assignment* with the same employer, an assignment with different 'essential duties' than his
7  previous ones."  Id. (emphasis added).

8  For purposes of Plaintiff's status as a Jones Act seaman, the Court cannot consider the
9  fact that Plaintiff served as a deckhand and a lookout on previous trips to and from Alaska,
10 and while employed by Wards Cove in Alaska.  Those facts are not relevant to Plaintiff's
11 assignment at the time of the incident.  During the winter of 2002/2003 Plaintiff was
12 employed as a shore-based welder, living aboard a Wards Cove vessel.  It is only in the
13 context of Plaintiff's assignment, with its attendant duties and tasks, that the Court may
14 consider Plaintiff's status as a Jones Act seaman.  Papai, 520 U.S. at 556.  Moreover,
15 contrary to Plaintiff's suggestion, consideration of Plaintiff's assignment at the Wards Cove
16 Seattle Yard is not a "snapshot" test for seaman status focusing merely on the instant of
17 injury.  Rather, it is full and complete consideration of the employment assignment at the
18 time of the Plaintiff's injury.

19 **A.  Work at sea in the service of the ship.**

20 The first part of the test requires that the employee's duties "contribute to the function
21 of the vessel or to the accomplishment of its mission."  Chandris, 515 U.S. at 368.  However,
22 only those that "work *at sea* in the service of the ship" are eligible for Jones Act seaman
23 status.  Id. (emphasis added).  Defendant urges the Court to find that Plaintiff is not a seamen
24 because he did not work *at sea* in the service of the ship.  Chandris, 515 U.S. at 368.
25 //
26 //

ORDER  -5-

The Ninth Circuit discussed work *at sea* in Heise, which parallels the facts in this case:

> The requirement that a seaman work *at sea* in the service of a ship embodies the first basic principle of the definition of 'seaman' . . . : Seamen do not include land-based workers. Thus, land-based maritime workers injured while on a vessel in navigation remain covered by the LHWCA . . . [and] do not become seamen because they happen to be working on board a vessel when they are injured.

Heise, 79 F.3d at 906 (emphasis in original). The plaintiff in Heise was a land-based worker who lived on-board the Alaska Ranger while performing welding and repair work on the vessel. Id. at 905. Plaintiff was injured while working with the Alaska Ranger's mooring lines, while moving the Alaska Ranger to a different location (apparently within the harbor). Id.

Although the facts here are similar to Heise, Plaintiff attempts to distinguish this case. Plaintiff argues that his service to Wards Cove vessels was necessarily in preparation for future trips, and therefore entitles him to seaman status. See Opp. to Summ. J., docket no. 24, at 7. In addition, Plaintiff argues his case is different from Heise because he was not a temporary laborer. Unlike Heise, Plaintiff had worked for Wards Cove for a number of years. However, Plaintiff's history with Wards Cove is not at issue in this case. Rather, only the scope of his assignment at the time of the incident is relevant to this Court's determination. The plaintiff in Heise was hired during the off-season to perform repairs and maintenance. Heise, 79 F.3d at 908 (plaintiff's tasks included "cleaning fuel tanks, rebuilding the main engines, on the ship, mostly mechanical work."). Plaintiff James was a shore-based welder and machinist whose tasks during the winter of 2002/2003 included work on-shore in the welding shop, as well as repairs and maintenance on various Wards Cove vessels moored in the Seattle Yard. See Steele Decl., docket no. 20, at ¶ 2. However, the fact that Plaintiff performed his tasks on a vessel that would eventually set sail does not make him a Jones Act seaman. See Heise, 79 F.3d at 906-07 ("The fact that [plaintiff] might be hired to work on the ship . . . does not change his land-based status at the time the injury

ORDER -6-

occurred.")

Plaintiff urges the Court to rely on Delange v. Dutra Const., Co., Inc., 183 F.3d 916 (9th Cir. 1999), where the Court distinguished Heise and found the plaintiff was a Jones Act seaman. Delange was a carpenter assigned to a piledriving crew that operated from a barge used as a work platform. Id. at 918. In addition to operating from the barge, plaintiff Delange performed traditional deckhand duties while in transit, including securing and stowing cargo, handling lines, and serving as a lookout. Id. Plaintiff also piloted a tug on one occasion. Id. The Ninth Circuit found error where the district court concluded that Delange "was a land-based worker, not a member of the barge's crew, which is the 'ultimate inquiry' in determining whether his connection to the barge was substantial in duration and nature." Delange, 183 F.3d at 920 (citing Chandris, 515 U.S. at 370). However, the facts in this case are substantially different from Delange. A significant part of Delange's employment were his tasks as a lookout, cargo stower, line handler, and occasional pilot when the barge was being moved. Id. at 920. Delange testified that only ten percent of his tasks were carpentry related, whereas his barge related tasks were "clearly seaman's duties." Id. Plaintiff's duties in this case are unlike Delange because his employment and employment activities were primarily shore-based. See Steele Decl., docket no. 20, at ¶ 2. Unlike Delange, a substantial part of Plaintiff's activities did not involve piloting Wards Cove vessels, or performing seaman's duties of any type. Rather, the record indicates that the substantial majority of Plaintiff's tasks involved welding, maintenance, and repair. See James Decl., docket no. 25, at ¶ 5.

Plaintiff's occasional assistance in the moving of Wards Cove vessels around the Seattle Yard is insufficient to meet the requirement for work *at sea* as articulated in Chandris. The plaintiff in Heise similarly assisted in moving the *Alaska Ranger*, but the Court rejected his claim to seaman status because his work was primarily land-based. Plaintiff James' assistance in moving Wards Cove vessels was insufficient as a matter of law

ORDER   -7-

to constitute work "at sea."

### B.    Connection to a vessel in navigation.

Defendant also urges the Court to find that there is no connection between Plaintiff and any vessel in navigation, or to an identifiable group of such vessels, that is substantial in terms of both its duration and its nature. Chandris, 515 U.S. at 368. It is undisputed that during the winter of 2002/2003, the Wards Cove vessels on which Plaintiff worked were laid up for the entire season. Steele Decl., docket no. 20, at ¶ 3. During the time that Plaintiff was working in the Seattle Yard, none of the vessels sailed, and Plaintiff was not assigned as a crew member on any of the Wards Cove vessels moored in the Seattle Yard. Id. The vessels were in the Seattle Yard for winter storage and repair. Id. The Supreme Court opinion in Desper v. Starved Rock Ferry Co., 342 U.S. 187 (1952), is instructive. In Desper, a crewman was injured on a vessel that was laid up for the winter.

> The work in which the decedent was engaged at the time of his death quite clearly was not that usually done by a 'seaman.' The boats were not afloat and had neither captain nor crew. They were undergoing seasonal repairs, the work being of the kind that, in the case of larger vessels, would customarily be done by exclusively shore-based personnel. For a number of reasons the ships might not be launched, or he might not operate one. To be sure, he was a probable navigator in the near future, but the law does not cover probable or expectant seamen but seamen in being. It is our conclusion that while engaged in such seasonal repair work [the plaintiff] was not a "seaman" within the purview of the Jones Act. **The distinct nature of the work is emphasized by the fact that there was no vessel engaged in navigation at the time of the decedent's death. All had been "laid up for the winter.**"

Desper, 342 U.S. at 191 (emphasis added). Plaintiff argues that this analysis is inapplicable in this case because the Desper vessels were in dry dock, and therefore not afloat. However, the difference between moorage and dry dock is unrelated to the question of whether the vessel is *in navigation*. Other Courts have found that vessels in dry dock were still in navigation. See Carumbo v. Cape Cod S.S. Co., 123 F.2d 991, 995 (1st Cir. 1941) ("[a] ship is in navigation, however, when it returns from a voyage and is taken to dry dock to undergo repairs preparatory to making another trip."). The distinction is whether the vessel remains

ORDER   -8-

in readiness for another voyage. Id. "[A] ship is not in navigation which has been laid up for the winter." Id.; see also Antus v. Interocean S.S. Co., 108 F.2d 185, 187 (6th Cir. 1939) (crewman performing maintenance on a vessel moored to the dock for the winter was not a seaman because "[w]hile the work had direct relation to navigation, it neither was performed during navigation season, nor was it even preparatory to navigation"). The Court finds that a vessel laid up for the winter in moorage is no more in navigation than a vessel laid up for the winter in dry dock. The Wards Cove vessels moored in the Seattle Yard for the winter were not vessels in navigation.

### C. Conclusion

The Court weighs the total circumstances of Plaintiff's employment to determine whether he had sufficient relation to the navigation of vessels and the perils attendant thereon. Plaintiff's employment was shore-based and cannot be characterized as "work at sea in the service of [a] ship." The vessels on which Plaintiff worked were moored for the winter season for the purposes of repair. The vessels were not to sail again until spring, and were not held in readiness for future voyages. Plaintiff's infrequent excursions into Lake Union to re-orient Wards Cove vessels are insufficient as a matter of law to establish a "connection to a vessel in navigation . . . substantial in terms of both its duration and nature." Heise, 79 F.3d at 906. Any connection Plaintiff had to a Wards Cove vessel "in navigation" during the winter of 2002/2003 was infrequent and sporadic. As such, during the winter of 2002/2003 Plaintiff was not a Jones Act seaman.

Plaintiff's claims under the Jones Act, 46 U.S.C. App. § 688, must be DISMISSED because Plaintiff was not a Jones Act seaman at the time of his injury.

## II. Longshore & Harbor Workers Compensation Act

### A. Application of the Longshore & Harbor Workers Compensation Act

The Defendant urges the Court to find that Plaintiff cannot sustain a negligence claim and that his sole remedy is the receipt of benefits through the Longshore & Harbor Workers

ORDER   -9-

Compensation Act ("LHWCA"). Under the LHWCA an "injury" is defined as an "accidental injury . . . arising out of and in the course of employment." 33 U.S.C. § 902(2). The LHWCA provides covered employees compensation for

> disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

33 U.S.C. § 903(a). Those individuals covered by the LHWCA include

> any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker

33 U.S.C. § 902(3). Not only must the injury have been caused by the employment, but it must also have arisen during the employment. U.S. Industries/Federal Sheet Metal, Inc. v. Director, Office of Workers Compensation Programs, 455 U.S. 608, 615 (1982). The Ninth Circuit has interpreted this as imposing both a "situs" and a "status" test for LHWCA coverage. See McGray Constr. Co. v. Director, Office of Workers Compensation Programs, 181 F.3d 1008, 1010 (9th Cir. 1999).

The "situs" element of the test is satisfied here because Plaintiff's injury occurred while the vessel was adjacent to a dock normally used for vessel moorage. Such a dock falls within the meaning of an "adjoining pier" as used in 33 U.S.C. § 903(a). See Hurston v. Director, Office of Workers Compensation Programs, 989 F.2d 1547, 1549 (9th Cir. 1993) ("[w]hile . . . we should not necessarily be bound to the principle 'if it walks like a duck, if it sounds like a duck, it's a duck,' if it appears to be a pier, if it is built like a pier and adjoins navigable waters, it's a pier."). Plaintiff does not seriously dispute that the "situs" element is satisfied in this case.

However, Plaintiff argues that the "status" element is not satisfied because Plaintiff's injuries did not arise "out of" and "in the course of" his employment. An injury covered under the LHWCA must have arisen during the employment. U.S. Industries, 455 U.S. at

ORDER -10-

615. At the time of the incident, Plaintiff was an off-duty employee, normally engaged in "maritime employment." See McGray, 181 F.3d at 1012 ("maritime employment" requires a connection with "loading, unloading, repairing or building a vessel"). The LHWCA covers employees who spend at least some of their time doing covered work activities. See, e.g., Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 273 (1977). Defendants urge the Court to find that the LHWCA covers employees who are injured outside their normal work hours while doing non-work activities. In O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504 (1951), the Court held that the LHWCA provided coverage to a claimant that drowned while attempting to rescue a person outside a company-owned recreation facility.

> [LHWCA coverage] is not confined by common-law conceptions of scope of employment. The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose. A reasonable rescue attempt . . . may be "one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute."

O'Leary, 340 U.S. at 506-07 (internal citations omitted). Defendants argue that the concept of foreseeable injury is embodied in the time-tested "bunkhouse rule," which extends coverage to off-duty employees injured in employer provided housing. However, the parties agree that application of the "bunkhouse rule" has traditionally involved mandatory housing; the housing arrangements for Plaintiff in this case were not mandatory. Plaintiff urges the Court to reject the "bunkhouse rule," because the housing at issue in this case was provided only as a convenience to Plaintiff.

The parties urge the Court to rely on various non-binding state law opinions. Argonaut Ins. Co. v. Workmen's Comp. App. Bd., 247 Cal. App. 2d 669, 678 (Cal. Ct. App. 1967) (roughhousing ranch employee injured on a non-working day, but allowed to live on premises, allowed to collect workers' compensation for injury in his leisure time); Broman v. Brassard, Inc., 35 A.D.2d 142, 143 (N.Y. Sup. Ct. 1970) (inferential benefits to employer of

ORDER   -11-

having employee live on-site allowed workers' compensation for off-duty injury); Wilson Cypress Co. v. Miller, 26 So.2d 441 (Fla. 1946) (bunk-house rule applies where employer furnished house-boat for employee quarters "for the obvious purpose of furthering his business"); but see Waddams v. Wright, 21 Wash.2d 603, 608 (1944) (although plaintiff cement worker lived on the employer's premises, his employment ceased when he left his actual work and did not resume until his return).

However, these cases are largely inapplicable to the circumstances of this case because this case is based on the LHWCA. The Supreme Court opinion in O'Leary provided broad coverage of foreseeable dangers: all that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose. O'Leary, 340 U.S. at 507. The reasoning of O'Leary controls in this case. An injury sustained while leaving quarters provided by the employer is substantially identical to an injury sustained while using recreational facilities sponsored and made available by the employer for the use of its employees. See id. at 505-07. In both cases the conditions of employment create the zone of special danger.[3]

The Court finds that the LHWCA applies under the circumstances of this case, and to Plaintiff's injury aboard the F/V Ocean Maid.

**B.     Negligence Claims under § 905(b) of the LHWCA**

Having determined that the LHWCA applies under the circumstances in this case, the Court must determine whether Plaintiff's negligence cause of action is barred by § 905(b) of the LHWCA. The Ninth Circuit has summarized the relevant provision as follows:

> Section 905(b) allows an employee covered by the LHWCA to sue a vessel whose negligence injures the employee, but bars all such negligence actions against vessels where (1) the employee was hired to provide

---

[3] Defendant notes that Plaintiff James has filed for LHWCA benefits with the U.S. Department of Labor. In Plaintiff's "Employee's Claim for Compensation" claim form, Plaintiff checked "YES" to question number fifteen, which asks whether the Claimant was "[i]njured while doing regular work?" See Ex. A to Smyer Decl., docket no. 21, at 2 ("Employee's Claim for Compensation" by Neal James).

ORDER   -12-

>     shipbuilding, repairing, or breaking services, and (2) the employer was the "owner, owner pro hac vice, agent, operator, or charterer of the vessel."

Heise, 79 F.3d at 907. In Heise, the plaintiff was employed to provide vessel repair services, including welding. Id. After the vessel was moved, Heise assisted in receiving and securing the vessel's lines. Id. After securing the lines, Heise complained of severe back pain. Id. The Ninth Circuit noted that the district court correctly granted summary judgment on Plaintiff's § 905(b) negligence claims.

>     Heise "was employed to provide . . . repairing . . . services" and therefore the third sentence of § 905(b) bars a negligence action by Heise "in whole or in part or directly or indirectly, against [his] employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer)".

Id. (citing 33 U.S.C. § 905(b)). In this case there is little question that Plaintiff was hired to perform repair services for Wards Cove vessels laid up for the winter in the Seattle Yard. In Heise, the Ninth Circuit noted that "[w]e have not previously considered when an employee 'was employed to provide . . . repairing . . . services' for § 905(b) purposes, but a number of Fifth Circuit decisions have addressed that question." Heise, 79 F.3d at 907. The Court then considered the Fifth Circuit definition for repair.

>     "repair" in § 905(b) must be given its ordinary meaning, "to restore to a sound or healthy state." . . . [I]f [the worker] is hired to restore a vessel to safe operating condition, he has been hired to perform "repairing . . . services" under § 905(b). If, however, he is hired to preserve the vessel's current condition, he is performing routine maintenance not covered by the section.

Heise, 79 F.3d at 903. In this case, Plaintiff does not dispute whether he was hired for repair services. However, the dispute as to whether Plaintiff is precluded from bringing a negligence claim under § 905(b) remains. Defendant argues that Plaintiff is precluded from bringing a claim under § 905(b) because he performed ship repair. Plaintiff counters that he is not precluded from bringing a negligence claim under § 905(b) because he was not performing ship repair at the time of his injuries.

    The F/V Ocean Maid was not being repaired at the time of his injury. At the time of

ORDER   -13-

Plaintiff's injury, more than two-months has passed since Plaintiff performed repairs on the F/V Ocean Maid. Plaintiff was quartered aboard the F/V Ocean Maid during the entire winter, and continued to provide repair services on other vessels. However, Courts have found that the timing of an injury, and the nature of the activity at the time of injury, are not dispositive of a Plaintiff's ability to bring a 33 U.S.C. § 905(b) negligence claim. For example, in Ducrepont v. Baton Rouge Marine Enterprises, Inc., 666 F. Supp. 882 (E.D. La. 1987), aff'd, 877 F.2d 393 (5th Cir. 1989), the employee was injured while descending stairs between decks in order to leave work at the end of the day. Id. at 884. However, the district court dismissed plaintiff's Complaint for negligence under § 905(b) because of the plaintiff's status and provision of repair services:

> [A] plaintiff need not be in the act of performing repair services at the moment of the accident in order to come within the coverage of the 1984 Amendments [to the LHWCA]. A person does not cease to be covered by the Act merely because at the moment of the injury he is not performing his usual duties.

Ducrepont, 666 F. Supp. at 887-88. Similarly, the plaintiff in Heise was not performing repair duties at the time of the incident which caused his injuries. Rather, the plaintiff was securing the vessel's lines. The Ninth Circuit focused on the plaintiff's regular repair duties:

> it is undisputed that [the plaintiff] "regularly perform[ed] some portion of what is indisputably [ship-repair] work" and was "assigned for an appreciable period of time to do substantial [ship-repair] work".

Heise, 79 F.3d at 908 (citing Gay v. Barge 266, 915 F.2d 1007, 1010 (5th Cir. 1990)). The question before the Court is whether an off-duty ship repair employee can maintain a negligence action under 33 U.S.C. § 905(b), when the injury occurs on a vessel that is not being repaired at the time of injury.

The Court concludes that Plaintiff is precluded from bringing a negligence action under 33 U.S.C. § 905(b). The plain language of the statute, and relevant precedent in the Ninth Circuit, indicate that the proper inquiry is whether the employee was employed to provide ship repairing services, and whether the employer was the owner of the vessel:

ORDER  -14-

> If [a person covered under the LHWCA] was employed to provide ship building, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no [negligence] action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.

33 U.S.C. § 905(b).

Plaintiff was employed to perform ship repair on a fleet of Wards Cove vessels and was injured aboard one of those vessels in the course of his employment. Pursuant to 33 U.S.C. § 905(b) and Ninth Circuit precedent, Plaintiff's claims for negligence under § 905(b) must fail.

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment, docket no. 18, as it relates to Plaintiff's Jones Act claims. Plaintiff's employment was shore-based and not "work at sea in the service of [a] ship." Plaintiff's connection to vessels *in navigation* was infrequent and insubstantial. Plaintiff has not raised a genuine issue of material fact as to his status as a seaman.

The Court also GRANTS Defendants' Motion for Summary Judgment, docket no. 18, as it relates to Plaintiff's claims under the LHWCA. Plaintiff was employed to perform ship repair on a fleet of Wards Cove vessels and was injured aboard one of those vessels in the course of his employment. 33 U.S.C. § 905(b) bars his negligence claims as a matter of law.

IT IS SO ORDERED.

DATED this 8th day of April, 2005.

/s/ Thomas S. Zilly
_____
THOMAS S. ZILLY
United States District Judge

ORDER -15-